## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **5:20-CR-50141(03)-JLV** |
| **Plaintiff,** | **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS OR, ALTERNATIVELY, TO SUPPRESS** |
| **vs.** | |
| **TRACY JONES, a/k/a Tracy Wilcox,** | |
| **Defendant.** | |

Drug Task Force agents arrested Tracy Jones, a/k/a Tracy Wilcox (Jones), on a federal warrant for conspiracy to distribute methamphetamine and questioned her after she waived her *Miranda* rights. Agents then took her to jail where, for some inexplicable reason, she sat for 37 days before a magistrate judge finally saw her. She moves to dismiss the case against her or, in the alternative, to suppress her statements to agents, on several grounds. Because Jones is not entitled to a dismissal or suppression, the Court recommends that her motion (including the amendment to it) be denied.

### BACKGROUND

On November 17, 2020, FBI Special Agent Dan Cooper and Oglala Sioux Tribe Criminal Investigators Derek Puckett and Jon Archambeau, all agents of the Badlands Safe Trails Drug Task Force, arrested Jones and others on federal warrants as part of a "sweep" conducted of the Martin, South Dakota area. Within two hours or so of her

arrest, agents interviewed Jones at the Bennett County State's Attorney's Office in Martin. Cooper explained to her that she would be transported the next day to the Pennington County Jail in Rapid City, to be booked and housed, and then would see a judge on the federal charge. While in the company of arresting agents, Jones signed a *Miranda* advisement form, acknowledging she understood her rights, agreed to speak with agents and did so. During her conversation with them, Jones provided information on several other persons, in and around Martin and Rapid City, and their drug activities. Jones also spoke about her own methamphetamine distribution and her supply sources.

Task Force agents did not elicit any statements from Jones after Investigator Archambeau handed her over to jail officers on November 18. Nor did agents conduct any follow-up interviews with Jones, or attempt to get her to talk, while she was in jail or at any later time.

The Government originally maintained a  Task Force agent provided phone notification on November 18 to the magistrate judge's chambers and to the United States Marshals Service (USMS) that Jones had been arrested on the federal offense and was in custody at the Pennington County Jail. After receiving the call, the Government says, the USMS picked Jones up, drove her to the USMS office for processing, and returned her to the Jail. Jones asserts no one ever advised the magistrate judge that she was in custody and needed to be seen until just before her December 23 initial appearance. In support of her assertion, Jones points to the judge's on-the-record

2

statement during the hearing that day: "For some reason we were not notified-- our office wasn't -- that she was taken into custody."[1]

Because of the COVID-19 pandemic in November and December 2020 (and for much of that year), most federal criminal defendants appeared for their hearings by video from the Jail. Because of this arrangement and the corresponding lack of any need to bring defendants to court, arresting agents typically were not informed of when a particular defendant was scheduled to make his/her first court appearance before the judge.

Jones secured released on December 23 after spending 37 days in jail. She later moved to dismiss the drug charge against her, under the Due Process Clause of the Fifth Amendment or to suppress her statements because they were obtained in violation of 18 U.S.C. §3501 and the McNabb-Mallory rule.[2]

At the motion hearing, Jones presented evidence that a Task Force agent did indeed contact the magistrate judge's chambers on November 18. But that evidence showed the agent said nothing about Jones in the voice message he left. By contrast, the Government offered no evidence (other than a "belief") to back up its contention that law enforcement notified the judge or her staff of Jones's arrest on, or shortly after, November 18. Faced with proof problems, the Government conceded, to decide Jones's

---

[1] *See* Mot. Hr'g Ex. F at 10 (Apr. 26, 2021).

[2] *See McNabb v. United States,* 318 U.S. 332 (1943); *Mallory v. United States,* 354 U.S. 449 (1957).

motion, that no notice had been given to chambers and that the Court could determine what the remedy should be for Jones's five plus week delay in presentment.[3]

## DISCUSSION

Jones claims that the way she was first presented to the magistrate judge, after arrival in Rapid City, violated her procedural rights under the Federal Rules of Criminal Procedure. She directs the Court's attention to Rule 5, which generally requires that upon arrest a defendant must be taken before a magistrate judge "without unnecessary delay" in the district where he/she was arrested.[4] Because she did not see a magistrate judge until December 23, 2020, Jones argues that she was not promptly presented as required by the Rule. Based on this perceived defect in proper procedure, she urges the Court to dismiss the indictment against her or, at a minimum, suppress those statements made in violation of her prompt right to presentment.

### A. Dismissal

#### 1. Waiver

Although the Eighth Circuit has not previously addressed the matter, courts have concluded that a defendant can indeed waive Rule 5's procedural safeguards.[5]

---

[3]*See* Mot. Hr'g Tr. 134-36, 140-43 (Apr. 26, 2021).

[4]*See* Fed. R. Crim. P. 5 (a), (c).

[5]*See United States v. McConnell,* No. 13-CR-273 (SRN/FLN), 2017 WL 396538 at *6 (D. Minn. Jan. 30, 2017) (collecting cases).

And courts have been accepting of a presentment waiver when the defendant has been given *Miranda* warnings, as was the case here.[6] Because these holdings are in keeping with the general presumption in favor of a defendant's right to waive his/her rights,[7] the Court adopts them and "joins the broad consensus in favor of upholding the validity of Rule 5 waivers."[8]

The question then becomes whether Jones' waiver was a knowing, voluntary, and intelligent one. On this record, the Court concludes that it was.

The waiver inquiry has "two dimensions": the waiver must have been (1) "voluntary in the sense that it was a free and deliberate choice rather than intimidation, corrosion, or deception" and (2) made "with a full awareness of both the nature of the right be abandoned and the consequences of the decision to abandon it."[9] The totality of the circumstances are to be considered when determining whether a person's waiver is allowed.[10]

---

[6]*See e.g. United States v. Guthrie,* 256 F. App'x 478, 480-81 (9th Cir. 2008); *United States v. Ostrander*, 411 F.3d 684, 696-97 (6th Cir. 2005); *United States v. Salamanca,* 990 F.2d 629, 634 (D.C. Cir. 1993); *United States v. Duvall*, 537 F.2d 15, 23-24, n.9 (2d Cir. (1976)); *Brown v. United States,* 979 A.2d. 630, 635-36 (D.C. 2009).

[7]*See New York v. Hill,* 528 U.S. 110, 114 (2000).

[8]*See McConnell,* 2017 WL 396538 at *6.

[9]*See Berghuis v. Thompkins,* 560 U.S. 370, 382-83 (2010) *(quoting Moran v. Burbine,* 475 U.S. 412, 421 (1986)).

[10]*See Burbine*, 475 U.S. at 421.

The record irrefutably shows that Jones waived her *Miranda* rights. She understood her rights and chose not to assert or rely on any of them when she spoke to Task Force agents.

Credible evidence proves that Jones was mindful of her rights and knew what she was doing.[11] Agent Cooper read each of them to Jones from an advice of rights form.[12] Jones then signed the form, acknowledged that she understood her rights, and was willing to speak to agents without a lawyer present.[13]

Jones's written waiver is a telling manifestation that she understood her rights and was disposed to give them up.[14] Her willingness to engage in an almost 45-minute colloquy without the benefit of counsel and to make statements was a "course of conduct indicating waiver" of her rights.[15] If Jones wanted to remain silent, confer with or have counsel present, or stop answering questions, she could have said so and ended

---

[11]*See Berghuis,* 560 U.S. at 385-86; *Burbine,* 475 U.S. at 421.

[12]*See* Mot. Hr'g Exs. 1, B, C; Mot. Hr'g Tr. 21-23, 34, 51-52, 92-93, 150.

[13]*See* Mot. Hr'g Exs. 1, B, C; Mot. Hr'g Tr. 22, 38, 51-54, 93, 150-51.

[14]*See North Carolina v. Butler,* 441 U.S. 369, 373 (1979) ("an express written…statement of waiver of the right to remain silent or the right to counsel is usually strong proof of validity of that waiver").

[15]*Berghuis,* 560 U.S. at 386.

the interrogation. That she chose not to and elected to participate – by herself—in a sustained dialog with Task Force agents is corroboration of a full-fledged waiver.[16]

What's more, Jones' statements were not coerced.[17] At no time did Task Force agents threaten or intimidate Jones, raise their voices, or become hostile toward her.[18] Nor did they use any force, lay hands on Jones, lie, or employ deceptive stratagems to get her to confess.[19] Jones's age (47), education (GED and  three and-a-half years of college), familiarity with the criminal justice system (misdemeanor arrests and convictions dating to 2001),[20] and conduct that day did not intimate that she was low functioning or particularly suggestable and vulnerable to inquiries by authority figures.[21]

Jones's responses to the *Miranda* advisement and statements and actions following it also established that she was not under the influence, suffering from any mental impairments, or having trouble grasping questions put to her and that she

---

[16]*See id.*

[17]*See id. (citing Burbine,* 475 U.S. at 421)*; Colorado v. Connelly,* 479 U.S. 157, 163-67, 170 (1986).

[18]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 54, 151.

[19]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 55-56.

[20]*See* Docket No.  51.

[21]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 54.

comprehended her predicament.[22] And she cooperated with agents (providing them with drug information about herself and others), asking and answering questions, and at times, correcting and clarifying what Agent Cooper said.[23]

This is not one of those isolated cases in which an arrestee, after being properly advised of her *Miranda* rights, failed to make an open and autonomous decision to speak with a probing agent. Jones did not say or do anything that conveyed an inability, on her part, to discern and appreciate her rights and the implications of what she was doing.[24] She knew of the situation she was in and was willing to answer questions. No evidence shows that agents improperly coerced her to do anything. Having waived her *Miranda* rights and given voluntary statements to agents two to three hours after her arrest, Jones cannot now seek the protection of Rule 5(a).[25]

## 2. Not the Remedy

Regardless, the appropriate remedy for a violation of Rule 5(a)(1)(A) is not dismissal of the indictment, but suppression of evidence illegally obtained as a result of the violation.[26] The reason is simple: since the provisions of Rule 5(a) are procedural,

---

[22]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 55, 63, 93, 150-151, 154.

[23]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 23, 54-55, 93, 151.

[24]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 22-23, 51-55, 93, 151.

[25]*See McConnell,* 2017 WL 396538 at **6-7; *United States v. Bell,* 740 A. 2d 958, 962-67 (D.C. 1999).

[26]*See United States v. Cooke,* 853 F.3d 464, 471 (8th Cir. 2017)*; United States v.*
(continued. . .)

not substantive, the sanction for failure to comply with the Rule is exclusion of those statements taken during the period of unnecessary delay.[27] So Jones's only available remedy is suppression of her November 17 statements to Task Force agents.

Jones's contention that she is entitled to dismissal of the charge against her under the Due Process Clause of the Fifth Amendment cannot be reconciled with federal precedents. They consistently refer to the application of evidentiary sanctions (*e.g.*, the

---

*Chavez*, 705 F.3d 381, 385-86 (8th Cir. 2013); *see also United States v. Peeples*, 962 F.3d 677, 686 (2d Cir. 2020)(Rule 5(a)'s history confirms that the remedy for a violation of the Rule is the exclusion of evidence, not dismissal of a criminal case); *United States v. Bibb*, 194 F. App'x 619, 623 (11th Cir. 2006) ("we have never recognized dismissal of the indictment as a proper remedy for a Rule 5 violation"); *United States v. Garcia- Echaverria*, 374 F.3d 440, 452 (6th Cir. 2004) (noting generally that the appropriate remedy for a violation of Rule 5(a) is suppression of statements and affirming the district court's denial of defendant's motion to dismiss on that basis); *United States v. Dyer*, 325 F.3d 464, 470 n.2 (3d Cir. 2003) (observing that even if the government had violated Rule 5(a), the remedy for such a violation is not dismissal, but suppression of statements taken during the period of unnecessary delay); *United States v. Castillo*, No.1:20-cr-00061-JPH-TAB, 2020 WL 6743283 at **1-2 (S.D. Ind. Nov. 17, 2020) (117-day delay before initial appearance did not require dismissal of the indictment because dismissal was not the appropriate remedy for the conceded Rule 5(a)(1)(A) violation); *United States v. Taylor*, No.10-cr-16 2010 WL 2425922 at *2 (E.D. Wis. 2010) (absent widespread violations of Rule 5 or flagrant misconduct and prejudice to defendant, dismissal of the indictment is not justified); *United States v. Savchenko*, 201 F.R.D. 503, 509 (S.D. Cal. 2001)(Rule 5 "is not a general remedial statute, but rather a rule designed to deal with a particular problem by applying an evidentiary sanction"); *United States v. Perez-Torribio*, 987 F. Supp. 245, 247 (S.D. N.Y. 1997) ("Unnecessary delay violations of Rule 5(a) warrant suppression of evidence," not dismissal of the indictment).

[27]*See Chavez*, 705 F.3d at 385 *(citing Dyer*, 325 F.3d, 464, 470 n.2 (3d Cir. 2003)).

exclusion of evidence), not dismissal of criminal charges, as the proper remedy for the violation of the prompt presentment rule.[28]

Now the Supreme Court has validated an "outrageous conduct" defense to a criminal prosecution: "we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."[29] But to warrant dismissal of an indictment, the outrageousness of such conduct must rise to the level of "violating that 'fundamental fairness' shocking to the universal sense of justice."[30]

Obnoxious police behavior, or even flagrant misconduct is not enough to establish outrageousness in a constitutional sense.[31] Rather, coercion, violence, or

---

[28]*See Peeples*, 962 F.3d at 685.

[29] *United States v. Russell*, 411 U.S. 423, 431-32 (1973).

[30] *Id.* at 432 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960)); see also *United States v. Chin*, 934 F.2d 394, 398 (2d Cir. 1991) (right to due process violated where "the governmental conduct, standing alone, is so offensive that it shocks the conscience") (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)); *Savchenko*, 201 F.R.D. at 507 ("To obtain dismissal for some government misconduct, including pre-indictment delay, there must be a showing of 'outrageous conduct' under the Firth Amendment, or a violation of some other substantive right such as the Speedy Trial Act.").

[31] *See United States v. Kelly*, 707 F.2d 1460, 1467 (D.C. Cir. 1983) (Opinion of Ginsburg, J.).

brutality to the person must be shown to transgress a defendant's right to due process.[32]

Jones never faced extreme and overwhelming coercion, much less physical, or psychological harm.[33] Nor can it be said that the Task Force agents' nonfeasance—in notifying the magistrate judge of Jones's arrest – was outrageous or that they purposefully perverted a constitutionally protected right to further their investigation efforts. Hence dismissal is not the rightful course of action.[34]

## B. Suppression

### 1. Delay in the Presentment

Assuming Jones has a basis to challenge her statements that she did not waive, she still cannot prevail on her fall-back suppression argument. Granted, the *McNabb-Mallory* rule, a judicial doctrine based in common law and not the Constitution, "generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a)."[35] But in 1968, Congress

---

[32] *See id.* (citing *Irvine v. California,* 347 U.S. 128, 132-33 (1954)); *see also Rochin,* 342 U.S. 166, 172 (physical coercion); *Watts v. Indiana,* 338 U.S. 49, 52-53 (1949) (psychological coercion).

[33] *See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 55-56.

[34] *See Savchenko,* 201 F.R.D. at 507-09.

[35] *See Corley v. United States,* 556 U.S. 303, 309 (2009) (quotation omitted).

enacted a statute[36] which limits this rule by providing a confession "shall not be inadmissible solely because of delay in bringing [the defendant] before a magistrate judge" if the confession was voluntary and was made "within six hours immediately following" the defendant's arrest or detention.[37] So if the confession came within the six-hour "safe harbor" of the statute, it is admissible if voluntary, subject to the rules of evidence and whatever weight the jury decides to give to it.[38] It is only when the confession occurred before presentment and beyond six hours that a court must decide whether delaying that long was unreasonable or unnecessary and the confession should be suppressed.[39]

Applying these principles, suppression of Jones's November 17 statements is uncalled for. She made her statements voluntarily,[40] less than six hours of being

---

[36]*See* 18 U.S.C. §3501.

[37]*United States v. Casillas,* 792 F.3d 929, 930 (8th Cir. 2015) (quoting *Corley,* 556 U.S. at 309-10 and 18 U.S.C. §3501(c))

[38]*See Corley,* 556 U.S. at 322.

[39]*See id.*

[40]*See* Mot. Hr'g Ex. B. (showing that Jones's statements were of her own free will and not coerced); *see also* Mot. Hr'g Tr. 23, 54-56, 93, 151 (testimony supporting voluntariness).

12

arrested.[41] They thus are admissible and not subject to *McNabb-Mallory's* presentment rule.[42]

### 2. Voluntariness

Jones, however, insists that her statements to Task Force agents were involuntary and should be suppressed. This claim, like the presentment delay one she makes, is unsustainable and provides her with no grounds for relief.

Cases in which a defendant can make a colorable argument that a self-incriminating statement was "compelled," when law enforcement authorities have adhered to the dictates of *Miranda*, are rare.[43] Jones still argues that the circumstances surrounding the November 17 interview in Martin, when combined with her tardy presentment before a magistrate judge, rendered her statements involuntary. The same

---

[41] *See* Mot. Hr'g Tr. 19, 58-59, 91.

[42] *See Corley*, 556 U.S. at 313-14, 322; *Casillas*, 792 F.3d at 931; *see also United States v. McDowell*, 687 F.3d 904, 909 (7th Cir. 2012) ("18 U.S.C §3501(c) provides a six-hour "safe harbor" for confessions given before presentment: A confession given within six hours of arrest is admissible  notwithstanding a delay in presentment if the judge finds it was voluntary."). *United States v. Carter*, 484 F. App'x 449, 457 (11th Cir. 2012) (oral confession admissible where it was made within six-hour safe harbor period of statute, voluntary, and in compliance with *Miranda*); *United States v. Bull Bear*, CR.18-50076-JLV, 2019 WL 4254667 at *7 (D.S.D. Sept. 9, 2019) ("A confession given within six hours of arrest cannot be suppressed due to a Rule 5(a) violation.").

[43] *See Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984).

analysis applies when considering the voluntariness of statements in the context of a *Miranda* waiver and under the Fifth Amendment.[44]

The interview only lasted 44 minutes and was polite and conversational.[45] Whatever accusatory inquiries Jones may have endured did not transform the meeting into a coercive  encounter that overbore her will.[46] What agents said and did (both before and after the *Miranda* waiver) had little or no effect on Jones.[47]

Undeterred, Jones maintains Agent Cooper made implied promises of leniency that persuaded her to break silence and waive her rights. But what Cooper said to Jones--about facing a ten-year mandatory minimum sentence unless she was truthful and cooperated--was not a promise (either expressed or implied). Exhortations that it would be in a suspect's best interest to tell the truth and that she would benefit from cooperating with authorities are not promises, much less ones that are false or

---

[44]*See Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986); *United States v. Havlik,* 710 F.3d 818, 822 (8th Cir. 2013); *United States v. Makes Room For Them,* 49 F.3d 410, 415 (8th Cir. 1995); *United States v. Brave Hawk,* 3:19-CR-30090-RAL, 2016 WL 311263 at *4 (D.S.D. Jan. 26, 2016).

[45]*See* Mot. Hr'g Ex. B; *see also* Mot. Hr'g Tr. 24-25, 55, 94 (interview was about 44-45 minutes long).

[46]*See United States v. Larrabee,* 3:16-CR-30039-RAL, 2016 WL 4987122 at *4 (D.S.D. Sept. 14, 2016); *Brave Hawk,* 2016 WL 311263 at *4; *United States v. Stoneman,* CR. 09-30101-RAL, 2010 WL 1610065 at **4-5 (D.S.D. April 20, 2010).

[47]*See United States v. Daniels* 775 F.3d 1001, 1005 (8th Cir. 2014).

unfulfillable.[48] Cooper's statements to Jones were not a promise or an impermissible hope of benefit, but encouragement to be honest in relating what she knew.[49]

The recording and Agent Cooper's testimony (which the Court found to be credible) show Jones's statements were voluntary.[50] They were ones she wanted to make and were not the offspring of any coercive environment and questioning that overwhelmed her faculties and paralyzed her ability to fend off the urge to confess. This being the case, the statements may be used against her as substantive evidence at trial.[51]

---

[48]*See Simmones v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001); *United States v. Pierce*, 152 F.3d 808, 810-13 (8th Cir. 1998); *Bolder v. Armontrout*, 921 F.2d 1359, 1366 (8th Cir. 1990).

[49]*See United States v. Cruse*, 59 F. App'x 72, 74-75, 78 (6th Cir. 2003); *Linares v. Yates*, CV 11-3310AG (JC), 2015 WL 1967042 at *7 (C.D. Cal. April 30, 2015); *State v. Pyles*, 166 N.H. 166, 171, 90 A.3d 1228, 1232 (2014); *Wilson v. State*, 285 Ga. 224, 227-28, 675 S.E.2d 11, 16 (2009); *Phillips v. State*, 2-02-452-CR, 2004 WL 362253 at *7 (Tex. Ct. App. Feb. 26, 2004).

[50]*See* Mot. Hr'g Ex. B; Mot. Hr'g Tr. 22-25, 54-56, 93, 151.

[51]*See United States v. Pugh*, 25 F.3d 669, 675 (8th Cir. 1994); *United States v Rohrbach*, 813 F.2d 142, 145, n.1 (8th Cir. 1987); *United States v. Jackson*, 712 F.2d 1283, 1285-87 (8th Cir. 1983); *see also United States v. Boche-Perez*, 755 F.3d 327, 343 (5th Cir. 2014) (delay did not result "in interrogation that was so lengthy, hostile, or coercive that it would tend to overwhelm [defendant's] will" and make his confession involuntary*); Lawhorn v. Allen*, 519 F.3d 1272, 1290-92 (11th Cir. 2008) (defendant arrested but judicial finding of probable cause was not made for six days, during which he confessed; held confession admissible because it was voluntary and after defendant had been given, and waived, his *Miranda* rights); *Ostrander*, 411 F.3d at 696 ("The rule in this circuit and in most others is that unnecessary delay, standing alone, is not sufficient to justify the suppression of an otherwise voluntary confession under 18 U.S.C. §3501, made during that period."); *United States v. Bear Killer*, 534 F.2d 1253, 1257 & n.3 (8th Cir. 1976) (statements given 9 ½ and 12 hours after arrest were voluntary and admissible); *United States v. Wright*, Crim No. 07-104(JRT/AJB), 2018 WL 141772 at **4-5 (D. Minn. Jan. 14,

(continued. . .)

## C. Supervisory Authority and Prejudice

Jones seeks dismissal, or at the very least, suppression to send a message that flaunting Rule 5(a) will not be tolerated and result in sanctions. She seemingly calls on the district court to exercise its supervisory authority and impose dismissal or suppression as punishment or as a deterrent against future presentment delays.

Federal courts have supervisory powers which, within limits, allow them to formulate procedural rules not specifically required by the Constitution or Congress.[52] The purposes underlying use of these powers are three-fold "to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy to deter illegal conduct."[53] But such powers are to be used sparingly.[54] Courts cannot punish misconduct unless it not only violated the defendant's right but also prejudiced her defense.[55]

---

2008) (despite four-month lapse between arrest and presentment, the statements were not made during period of unnecessary delay, but even if they were, the statements were voluntary and not subject to suppression).

[52] *See United States v. Hasting*, 461 U.S. 499, 505 (1983).

[53] *Id.* (internal citations omitted).

[54] *See United States v. Stokes*, 124 F.3d 39, 46 (1st Cir. 1997).

[55] *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (a federal court may not invoke its supervisory powers to dismiss an indictment for misconduct before the grand jury where the misconduct did not prejudice defendant); *Hasting*, 461 U.S. at 506 (supervisory powers may not be used to remedy harmless errors); *United States v.*
(continued. . .)

Some courts, including the Eighth Circuit, have held that prejudice results only when the government uses the delay to subject the defendant to unwarranted interrogation.[56] Task Force agents did not detain Jones for an unnecessary period to elicit a confession from her.[57]

At any rate, the record belies any claims of prejudice. Jones has been on pretrial release, and had counsel representing her, for more than five months. She has filed discovery requests, objections, motions, and memoranda and had ample time to interview witnesses, conduct investigations, and mount a defense to the drug charge. And since a trial date has not even been set in her case, Jones can hardly claim that she was, or has been, deprived of an adequate amount of time to prepare her case. While regrettably, Jones's period in custody was far longer than it should have been  and may have kept her from providing aid and comfort to her aunt and son in their times of

---

*Casas*, 425 F.3d 23, 47-48 (1st Cir. 2005) (a court may use its supervisory powers only where there is a nexus between the improper conduct and prejudice to defendant); *United States v. Fernandez*, 388 F.3d 1199, 1239 (9th Cir. 2004) (to justify the exercise of a court's supervisory powers, the misconduct must be flagrant and cause substantial prejudice to defendant).

[56] *See, e.g., United States v. Cardenas*, 410 F.3d 287, 293-94 (5th Cir. 2005); *United States v. Garcia-Echavarria*, 374 F.3d at 452-53; *United States v. Morrison*, 153 F.3d 34, 56 (2d Cir. 1998); *Theriault v. United States*, 401 F.2d 79, 86 (8th Cir. 1968).

[57] *See Boche-Perez*, 755 F.3d at 338-39; *see also Cooke*, 853 F.3d at 471 (observing that the purpose of Rule 5(a) is to frustrate law enforcement officers from detaining an arrestee for an unnecessary time to enable them to extract a confession from him); *United States v. Jeanetta*, 533 F.3d 651, 655-56 (8th Cir. 2008) (same).

need, there is no evidence that Task Force agents acted intentionally or willfully in denying her access to the court.

Jones made no statements, and the Government obtained no additional evidence, beyond §3501(c)'s six-hour time limit. Nor does it appear that the delay caused the loss of evidence valuable to her. And because the grand jury handed down the indictment before Jones's arrest, the delay did not result in her continued detention without any probable cause determination. Finally, even if the district court's supervisory powers might be appropriate to punish or deter based on repeated violations of Rule 5(a), Jones presented no such pattern among Western Division arrestees and none appears to exist.[58]

In the end, Jones was not prejudiced by her delay in the presentment to require dismissal of her charged offense or suppression of the statements she gave to agents within a few hours of her arrest.[59]

---

[58]*See* Mot. Hr'g Tr. 31-32, 39-40, 47, 73, 99; Docket No. 152 at 13-14 & n.2; *but see United States v. Theus, II,* No. 1:14-cr-10005-CBK, R&R (Mar. 19, 2021) (15-day delay); *United States v. Bobtail Bear,* No. 1:14-cr-10011-CBK, R&R (May 19, 2021) (7-day delay in supervised release case).

[59]*See Cooke,* 853 F.3d 471; *Chavez,* 705 F.3d at 385-86; *United States v. Mangual-Santiago,* 562 F.3d 411, 432 (1st Cir. 2009); *see also United States v. Jernigan,* 582 F.2d 1211, 1214 (9th Cir. 1978) (although DEA agents deliberate delay in arresting defendant until a time when, as the agent well knew, defendant would be unable to go before a magistrate, dismissal of indictment constituted too drastic of remedy where defendant was unable to point to any prejudice other than he spent time in jail); *Taylor,* 2010 WL 2425922 at *2-3 (no specific prejudice in defendant's ability to defend the case based on 26-day delay to require dismissal of his indictment); *United States v. DiGregorio,* 795 F.
(continued. . .)

### D. Potential Civil Recourse

That is not to say Jones has no remedy for the Rule 5(a) violation. She still can pursue a civil action and seek to hold those responsible for her delay liable.[60]

### E. Admonishment

Jones's 37-day stay in jail was tragic. It should have never occurred. Task Force agents believe someone notified the magistrate judge of her arrest and incarceration, but they were mistaken. They did not, however, try and dupe anyone, have a hidden agenda, engage in bad faith, or intend to delay the presentment process.[61] Even so, Jones paid an enormous price. She lost her liberty for more than a month. Agents, and

---

Supp. 630, 634-36 (S.D. N.Y 1992) (defendants failed to show "demonstrable prejudice" for five-month delay, making dismissal of indictment "inappropriate"); *see generally* 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice, and Procedure, §72, n.21 (4th ed. 2008 & 2021 Update) ("Exclusion of a confession is not required if the confession came before there had been delay; a confession given promptly upon arrest is admissible even though thereafter there is improper delay in taking the defendant before a magistrate judge."); *but see United States v Osunde,* 638 F. Supp. 171, 176-77 (N.D. Cal. 1986) (dismissing the indictment for violating Rule 5(a) where defendant was held for 106 days before appearing before a judge but noting there was no case law supporting dismissal).

[60] *See Hayes v. Faulker County, Ark.,* 388 F.3d 669, 673-75 (8th Cir. 2004); *Armstrong v. Squadrito,* 152 F.3d 564, 571-82 (7th Cir. 1998); *see also Garcia Rodriquez v. Andreu Garcia,* 403 F. Supp. 2d 174, 176, 178 (D. P.R. 2005) (where an arrestee alleged that he was not brought before a magistrate judge after his arrest and was incarcerated for five days until he was released on bail, he stated a civil claim under the Due Process Clause).

[61]*See* Mot. Hr'g Tr. 31, 39-40, 59-30, 73, 98.

their fellow officers, need to have a protocol in place for promptly notifying the magistrate judge, or someone other judicial officer, when a person has been arrested and for taking each such arrestee, without unnecessary delay, before that judge or officer. Law enforcement officers are now on notice of what they must do. A delay like Jones experienced must not happen again-- to anyone else without good reason.[62] If it does, a different remedy (than admonishment) may be called for.

## CONCLUSION

Jones was advised of all her *Miranda* rights, knowingly, voluntarily, and intelligently waived those rights without ever invoking them. This waiver served also to waive her rights under Rule 5(a)(1)(A). But even if it did not, Jones's remedy is suppression of any evidence illegally obtained as a result of the Rule 5(a) violation, not dismissal of the indictment. The statements she made were neither caused by nor the product of her delay in presentment. And they were voluntary for purposes of the Fifth Amendment. The statements are therefore freely admissible at trial.

Jones's 37-day delay is by no means something that can, or should be, brushed aside. It was though an inadvertent error and is not part of a systemic problem in the District's Western Division. Admonishment, rather than a more harsh remedy, is the elixir in this case.

---

[62] *See 1 Federal Practice and Procedure, § 73* (discussing reasons for delay in presentment).

**RECOMMENDATION**

For all of these reasons, and based on the authorities cited in this report and the record now before the Court, it is

RECOMMENDED that Jones' Motion and Amended Motion to Dismiss and to Suppress,[63] be denied in all respects.

**NOTICE**

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[64] Unless an extension of time for cause is later obtained,[65] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[66] Objections must "identify[] those issues on which further review is desired[.]"[67]

---

[63]*See* Docket Nos. 95, 113.

[64]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[65]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[66]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[67]*Arn*, 474 U.S. at 155.

21

Dated this 28ᵗʰ day of May, 2021, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**